48 So.2d 563

**NEELY v. STATE.**

6 Div. 857.

Court of Appeals of Alabama.
April 11, 1950.

Rehearing Denied May 9, 1950.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

Geo. Rogers, of Birmingham, for appellant.

HARWOOD, Judge.

This appellant stands convicted under an indictment charging him with the larceny of "one iron coal stove from the building of the New Harmony Baptist Church, an unincorporated religious society, in Cullman

County, Alabama, of the value of $40.00, the personal property of the New Harmony Baptist Church," etc.

The evidence presented by the State was to the effect that a stove was taken from the church in question, and was later located by members of the church in a junk yard in Attalla, Alabama, and identified by them as the stove formerly in the church.

Employees of the junk yard identified the defendant as being the person who had sold the stove to them, the defendant at the time having 7 or 8 stoves in a truck. All of the stoves when brought to the junk yard were "tore up."

Appellant's counsel strenuously argues that the lower court erred in refusing defendant's request for the affirmative charge because of the insufficiency of the State's evidence to establish the character of the stove as personal property.

The evidence pertaining to this question tends to show that the stove was an iron "Jumbo" stove in five sections, and was higher than a man's head. It had been used in the church for some twenty years.

Robert Edwards, an employee of the junk yard, testified that the stoves brought to him by the defendant, and which included of course the stove in question, were "just ordinary stoves"—"They were just ordinary cast iron heaters; I've seen several of them around in school houses."

In Langston v. State, 96 Ala. 44, 11 So. 334, 335, our Supreme Court had the following to say regarding the determination of the character of objects found on land, that is whether they were to be considered as personalty or realty: "The subject of fixtures is one of great difficulty, and has evoked much discussion and a great contrariety of opinion. When doubt arises as to whether or not a certain piece of property is a fixture, this doubt must be decided by the circumstances of each individual case, as they may be influenced by certain cardinal rules which have now become criteria for the decision of the question. If the article in question meets the requirements of these rules, its character as a fixture is determined. These rules, as gathered from the adjudicated cases, have been succinctly stated as follows: (1) Actual annexation to the realty or to something appurtenant thereto; (2) Appropriateness to the use or purposes of that part of the realty with which it is connected; (3) The intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred; (a) From the nature of the article annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made."

Virtually this same statement is to be found in Teaff v. Hewitt, 1 Ohio St. 511, at page 530, 59 Am.Dec. 634, and the Ohio case, decided in 1853, has been the leading case on fixtures since its pronouncement.

However, as pointed out by an able writer on personal property law, "these three tests are only media for determining the ultimate question of whether under all the facts and circumstances the ordinary reasonable man of the community would consider the article in question as a part of the real estate." Brown on Personal Property, p. 628.

Primarily whether or not an article is a fixture is a question of fact to be determined by a jury. If the facts undisputably show the character of an article one way or the other then the character is determined as a matter of law.

Certainly in this climate ordinary heaters or stoves are regarded as in the nature of furnishings, and therefore personalty. Under the description of the stove given by the witness Edwards, we think the jury by the application of their common knowledge as to the nature of ordinary stoves used in rural churches in their communities were authorized in concluding that the stove in this case was personalty.

The verdict returned by the jury was: "We the jury find the defendant guilty." This is a general verdict, and while the jury did not assess the value of the stove stolen, the verdict is referable to the indictment, which alleges the value of the stove to be $40.00.

This record is in our opinion free of error, probably injurious to the substantial rights of this accused. It is therefore ordered affirmed.

Affirmed.